## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| CANDI  LINVILLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV1663MLM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue, the Commissioner of Social Security, ("Defendant") denying the application of Plaintiff Candi Linville ("Plaintiff") for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381.  Plaintiff filed a brief in support of the Complaint.  Doc. 17. Defendant filed a brief in support of the Answer. Doc. 22.   The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8.

## I.
## PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits and SSI, alleging a disability onset date of June 2, 2005. Tr. 113-24.  Plaintiff's applications were denied, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 54-55, 72-79.  After a hearing on October 25, 2007, the ALJ issued a decision finding Plaintiff not disabled. Tr. 8-53, 57-69.  Plaintiff filed a Request for Review with the Appeals Council. Tr. 4-5.  On August 28, 2009, the Appeals Council denied Plaintiff's

Request for Review. Tr. 1-3. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ... ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e).  The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC").  Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  The ALJ will review  a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id.  See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden  of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence.  Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir.

2000) (quoting <u>Terrell v. Apfel</u>, 147 F.3d 659, 661 (8th Cir. 1998)); <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

<u>Brand v. Sec'y of Dept. of Health, Educ. & Welfare</u>, 623 F.2d 523, 527 (8th Cir. 1980); <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." <u>Ford v. Astrue</u>, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility

assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleged that she became disabled on June 2, 2005, due to diabetes, obesity, chronic obstructive pulmonary disease ("COPD"), asthma, and a back disorder (degenerative disc disease). The ALJ found that Plaintiff's alleged impairments were severe and that Plaintiff did not have an impairment or combination of impairments which met or equaled a Listing. After determining Plaintiff's RFC, the ALJ concluded that there are jobs which exist in significant numbers that Plaintiff can perform and that, therefore, she is not disabled. Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because the ALJ erred in regard to his determination of Plaintiff's RFC; because the ALJ ignored "[m]uch of the evidence provided by Plaintiff," including her use of a TENS unit; because the medical evidence does not support the ALJ's RFC finding; because the ALJ did not give proper weight to the opinion of Tulika Katyal, M.D.; because the ALJ did not recontact Plaintiff's doctors, including Dr. Katyal; because the ALJ "ignored" testimony of the VE that there is not work which Plaintiff can perform; and because the ALJ did not pose a proper hypothetical to the VE.

A.    **Plaintiff's RFC:**

Plaintiff contends that the ALJ did not properly determine her RFC and that the medical evidence does not support the ALJ's determination of her RFC. The ALJ found that Plaintiff has the RFC to lift/carry ten pounds and occasionally climb stairs and ramps; that she can never climb ropes, ladders, or scaffolds; that she can never crawl; that she must avoid concentrated exposure to extreme

cold, heat, humidity, vibration, fumes, odors, dust, gases, and hazards of heights and machinery; and that she is limited to work with a sit/stand option.

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir.2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir.2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and

mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo, 377 F.3d at 806. "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5 "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737).

Upon making an RFC assessment an ALJ must first identify a claimant's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004).

First, upon to determining Plaintiff's RFC, the ALJ copiously considered the medical evidence of record, and concluded that these records discredited Plaintiff's claim of disability. Tr. 65-68. See Eichelberger, 390 F.3d at 591; Lauer, 245 F.3d at 704. Indeed, although an ALJ may not disregard a claimant's subjective allegations because they are not fully supported by objective medical evidence, an ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th cir. 2002)); 20 C.F.R. §§ 404.1529(c), 416.929(c). In regard to Plaintiff's diabetes, the ALJ considered that Dr. Katyal stated, on April 30, May 18, and September 1, 2006, and on January 21, 2008, that Plaintiff's diabetes was stable; that in January 2006, Dr. Katyal stated that Plaintiff had foot pain due to neuropathy and prescribed Lyrica and foot exercises; that Dr. Katyal stated, on May 11, 2006, that, if there was no improvement in Plaintiff's neuropathy and plantar fasciitis, he would refer her to a podiatrist; that he saw Plaintiff in June and August 2006; and that Dr. Katyal's records do not reflect that he referred Plaintiff to a podiatrist or that she was treated for diabetic neuropathy after August 2006. Indeed, the failure to seek medical treatment is not suggestive of a disabling condition. See Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's

decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

In regard to Plaintiff's diabetes, the ALJ further considered that there was no evidence that Plaintiff's diabetic neuropathy had caused her "significant or persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dextrous movements, or gait and station." Tr. 66. As stated by the Eighth Circuit:

> The listing for presumptively disabling diabetes requires a showing of a diabetes diagnosis with "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. pt. 404, subpt. P, app. 1 § 9.08(A). Peripheral neuropathy is presumptively disabling as a neurological disorder with a showing of significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. See id. § 11.14. A presumptively disabling affective disorder is shown by a medically documented depressive syndrome accompanied by functional loss severe enough to be incompatible with the ability to perform work-related functions. See id. § 12.04; 20 C.F.R. § 404.1520a.

Cunningham v. Apfel, 222 F.3d 496, 502 n.8 (8th Cir. 2000).

Further, the court notes, in regard to Plaintiff's allegation that she is disabled due to diabetes, it was reported on July 17, 2006, October 2, 2006, and June 11, 2007, that Plaintiff had non-insulin dependent diabetes which was likely secondary to chronic steroid use. Tr. 352-53, 396, 410. Also, Plaintiff testified at the hearing that she lost 64 pounds and did not have to take pills for diabetes. Tr. 28.

In regard to Plaintiff's allegation that she is disabled due to back pain, the ALJ considered that an MRI of the lumbar spine, taken on May 19, 2006, showed that the protrusion at L5-S1 "barely touched the dural sac at the anterior midline and did not displace a nerve root"; that examination of the lumbar spine, on July 17, 2006, "showed no pain with flexion, right, or lateral side bending," and no sacroiliac joint tenderness; and that a March 24, 2008 MRI of the lumbar spine showed

degenerative disc disease with a small disc protrusion and a mild to moderate disc bulge. The ALJ further considered that Ashok Kumar, M.D., reported, on April 4, 2008, among other things, that Plaintiff's hip motion was normal bilaterally; that there was no trochanteric area tenderness; that the sacroiliac joints were non-tender; that Plaintiff's gait was nonantalgic; that Plaintiff was able to walk on her heels and toes without difficulty; that Plaintiff did not have any major neurological issues; that Plaintiff was obese; that she needed to lose weight and be on an exercise program; that Plaintiff should attend physical therapy "but that [Plaintiff] did not think her insurance would cover it"; and that he recommended steroid injections. The ALJ also considered that Xiahui Fan, M.D., a pain management specialist who treated Plaintiff from August 14, 2008, through January 19, 2009, reported that *medications helped* Plaintiff *"a lot"* and were *"improving [Plaintiff's] daily functioning and sleep"*; that Dr. Fan *did not report that Plaintiff had side effects from her medications*; and that Dr. Fan reported that Plaintiff cannot perform frequent lifting over fifteen to twenty pounds. Tr. 66. As noted by the ALJ, conditions which can be controlled by treatment are not disabling. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450. Additionally, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d

1441, 1444 (8th Cir. 1994). Indeed, the lifting restrictions placed upon Plaintiff by Dr. Fan are not inconsistent with those imposed by the ALJ.

In regard to Plaintiff's allegation that she is disabled due to COPD, the ALJ considered that a pulmonary function study from July 2005 was "surprisingly normal" with an FVC of 97%, $FEV_1$ of 90, and an FEF25-75 of 68%. The ALJ also considered that chest x-rays of December 2005, February 2006, September 2006, November 2006, and June 2007, showed no active pulmonary pathology. The ALJ further considered that March 2007 pulmonary function studies showed "only mild restriction"; that evidence does not indicate that Plaintiff experienced frequent exacerbations of COPD; and that, although Plaintiff had an exacerbation of her COPD in April 2007, "it was noted that she was still smoking one pack of cigarettes a day." Tr. 66-67.

The Regulations state that "once a [respiratory] disease process is established by appropriate clinical and laboratory findings," "pulmonary function testing is required to assess the severity of the respiratory impairment." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.00(A) (2000). The critical spirometric value for assessing disability based on COPD is the $FEV_1$ value, or forced expiratory volume at one second. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.02(A) (2000). The Regulations stipulate that any pulmonary function test resulting in an $FEV_1$ value less than 70 percent of the predicted value must be repeated after administration of an aerosolized bronchodilator to the test subject. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.00(E). Thus, the values reported are well above the Listings levels and, therefore, do not support Plaintiff's position that she should be found disabled based on breathing problems. The court finds that the ALJ properly considered the results of testing upon discrediting Plaintiff's claim of disability due breathing problems and that his decision in this regard is supported by substantial evidence. See Pelkey v. Barnhark, 433 F.3d 575, 578 (8th

Cir. 2006) (holding that the absence of objective medical basis for a claimant's complaints is one factor to be considered upon determining claimant's credibility).

The court notes, in regard to Plaintiff's allegation that she is disabled due to COPD, that Gregory Becker, M.D., reported, on June 2, 2005, that Plaintiff had relatively stable chronic bronchitis and that her obstructive airway disease was secondary to an increase in smoking. Tr. 230. In September and December 2005, Dr. Becker reported that Plaintiff had nicotine addiction, and, on October 15, 2008, Dr. Katyal reported that Plaintiff had tobacco abuse and that he advised her to stop smoking. Tr. 228-29, 526. In December 2006, it was reported that Plaintiff's reactive obstructive airway disease was stable and that she was again advised to quit smoking. Tr. 225. As considered by the ALJ, subjective complaints of pain may be discredited where a claimant ceases to stop smoking upon a doctor's advice. See Wheeler v. Apfel, 224, F.3d 891, 895 (8th Cir. 1996) (citing Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding that impairments which are controllable or amendable to treatment including certain respiratory problems, do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of smoking, without good reason is grounds for denying an application for benefits).

In regard to Plaintiff's allegation that she is disabled due to depression, the ALJ considered the four functional areas set out in the Regulations for evaluating a mental disorder.[1] In particular,

---

[1]     If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in regard to episodes

the ALJ found that Plaintiff had no limitation in activities of daily living; that she had a mild limitation in social functioning; that she had no limitation in the area of concentration, persistence, or pace; and that she had experienced no episodes of decompensation. Because Plaintiff's depression caused no more than a mild limitation in any of the areas specified in the Regulations, the ALJ found that Plaintiff's depression was non severe. Tr. 62-63. When "the degree of []limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). As such, the ALJ's determination that Plaintiff's alleged mental impairment is non-severe is consistent with the Regulations.

The ALJ also considered that Plaintiff received individual therapy from September 21, 2006, through July 12, 2007; that Plaintiff had problems with her teenage children; and that she "got much better after receiving counseling." Tr. 67. The court notes that Dr. Katyal reported in January 2006 that Plaintiff's anxiety had improved since she was placed on Lexapro. Tr. 438. As stated above, and by the ALJ, impairments which can be controlled by treatment or medication are not disabling. See Schultz, 479 F.3d at 983; Estes, 275 F.3d at 725; Murphy, 953 F.2d at 384; Warford, 875 F.2d at 673. To the extent that Plaintiff's depression was related to problems with her teenage children, situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). The ALJ further considered, in regard to Plaintiff's depression, that it was reported on

---

of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id.

March 1, 2006, that Plaintiff had not been seen for six months. As stated above, and by the ALJ, a lack of medical treatment suggests that a claimant's symptoms are not as severe as she has alleged. See Edwards, 314 F.3d at 967; Gwathney, 104 F.3d at 1045.

In regard to Plaintiff's obesity, Plaintiff was diagnosed with obesity on numerous occasions, and it was noted on July 17, 2006, that she was 5'3" tall and weighed 257 pounds. Tr. 408-409, 478, 480. The record does not reflect that Plaintiff sought or received treatment for obesity. Failure to seek medical treatment is a consideration when discrediting a claimant's complaints of pain. See Rautio, 862 F.2d at 179.

In addition to considering the Plaintiff's medical records and the records of Plaintiff's doctors, the ALJ considered all other relevant, credible evidence in the record, including Plaintiff's testimony regarding her limitations. See Tucker, 363 F.3d at 783; Anderson, 51 F.3d 779. The ALJ considered Plaintiff's testimony that she gets short of breath and has panic attacks; that, when she gets short of breath, she feels shaky and confused; that she has a hard time sleeping; that she quit smoking in 2008; that she lies down two to three times a day; and that she has knee pain and neck problems. Tr. 65. The ALJ stated that discrepancies in the record detracted from Plaintiff's credibility regarding her allegation of disability. See Eichelberger, 290 F.3d at 589. These discrepancies included Plaintiff's stating that she did not drink alcohol, although emergency room records reflected that she developed hives after drinking a red punch containing Jack Daniels. Also, as discussed above, the ALJ considered that some of Plaintiff's allegedly disabling conditions were controlled by medication and that she had a lack of treatment for other conditions. See Schultz, 479 F.3d at 983; Estes, 275 F.3d at 725; Murphy, 953 F.2d at 384; Warford, 875 F.2d at 673; James, 870 F.2d at 450. The ALJ also considered that Plaintiff was only thirty-five years of age on her alleged onset date; that she did not have a very good work history; and that her claim of being unable to work can be discounted based

on an appearance that she was not motivated to work. Tr. 67. An ALJ may discount a claimant's credibility based upon her poor work record. Ownbey v. Sullivan, 5 F.3d 342, 345 (8th Cir. 1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). The court finds that the ALJ's determination that there were discrepancies in the record which detract from Plaintiff's credibility is based on substantial evidence.

The ALJ identified Plaintiff's functional limitations and restrictions and then assessed her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris, 356 F.3d at 929. Upon determining Plaintiff's RFC, the ALJ properly assumed his role of resolving conflicts in the record. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). Only after considering all the evidence and resolving conflicts did the ALJ determine Plaintiff's RFC. The court finds that the ALJ's assessment of Plaintiff's RFC is based upon and consistent with all of the relevant evidence, including the medical evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995)).

The court further finds, despite Plaintiff's contention to the contrary, that the ALJ did not ignore evidence presented by Plaintiff. Although Plaintiff argues that the ALJ did not consider her use of a TENS unit, the ALJ did acknowledge her use of a TENS unit, noting that it was prescribed but that Medicaid would not pay for it. Tr. 65. To the extent that the ALJ did not specifically address every scintilla of evidence, including each of the numerous scans or x-rays which Plaintiff had, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review.");

<u>Montgomery v. Chater</u>, 69 F.3d 273, 275 (8th Cir. 1995). In conclusion, the court finds that the ALJ's assessment of Plaintiff's RFC is consistent with the case law and Regulations and that it is based on substantial evidence on the record as a whole. <u>See</u> <u>Lauer</u>, 245 F.3d at 704; <u>Singh</u>, 222 F.3d at 451.

**B.     Opinion of Dr. Katyal:**

Dr. Katyal, who was one of Plaintiff's treating doctors, opined, in a letter, dated February 18, 2008, that Plaintiff was not able to sit for longer than two to three hours at a stretch due to low back pain. Tr. 474. On August 15, 2008, Dr. Katyal again opined that Plaintiff was unable to sit for longer than two to three hours at a stretch due to chronic low back pain and added that this was a permanent condition and that Plaintiff could not return to work. Tr. 520. Plaintiff contends that the ALJ should have given controlling weight to Dr. Katyal's opinion and, alternatively, that the ALJ should have recontacted Dr. Katyal to fully develop the record.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." <u>Estes</u>, 275 F.3d at 725 (internal quotation marks omitted). <u>See</u> <u>also</u> <u>Tindell v. Barnhart</u>, 444 F.3d 1002, 1004 (8th Cir.2006). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. <u>Cunningham v. Apfel</u>, 222 F.3d 496, 502 (8th Cir. 2000) (citing <u>Ghant v. Bowen</u>, 930 F.2d 633, 639 (8th Cir. 1991); <u>Kelley v. Callahan</u>, 133 F.3d 583, 589 (8th Cir.1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. <u>Leckenby v. Astrue</u>, 487 F.3d

626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate the record as a whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). A treating physician's checkmarks on a form, however, are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996). Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that

undermine the credibility of such opinions." Prosch, 201 F.3d at 1013. See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Moreover, a brief, conclusory letter from a treating physician stating that the applicant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment); Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994) (citing Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991)); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence).

Additionally, Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996). Additionally, SSR 96-2p clarifies that 20 C.F.R. §§ 404.1527 and 416.927

require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5.

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole."). See also Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).

First, upon his not giving controlling weight to Dr. Katyal's opinion, the ALJ in the matter under consideration evaluated the record as a whole, including the medical evidence of record and Plaintiff's testimony. Wilson, 172 F.3d at 542.

Second, while the ALJ did not give controlling weight to the opinion of Dr. Katyal, the ALJ's RFC finding reflects that he took Dr. Katyal's opinion into consideration and that he imposed significant restrictions on Plaintiff based on that opinion. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrated that the ALJ gave some credit to the opinions of the treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions.").

Third, the ALJ stated that he considered Dr. Katyal's opinions of February 18 and August 15, 2008, but that he did not give them significant weight because Dr. Katyal's opinions were not supported by his treatment notes. In this regard, the ALJ considered that Dr. Katyal never reported Plaintiff as being in distress. In fact, Dr. Katyal's treatment notes do not reflect that Plaintiff had difficulty sitting and, on numerous occasions, reflect that she had good range of motion. Tr. 68, 350, 358, 360, 401, 422, 428, 433, 439, 441, 446, 448, 450, 454.  Additionally, as stated above, Dr. Katyal did not refer Plaintiff to a podiatrist after stating that, if her neuropathy did not improve, he would do so. The ALJ properly discredited Dr. Katyal's opinion because it was inconsistent with this doctor's own records. See Hacker, 459 F.3d at 937; Chamberlain, 47 F.3d at 1494; Barrett, 38 F.3d at 1023.

Fourth, the ALJ properly considered that other medical opinions of record were not consistent with Dr. Katyal's opinion. See Prosch, 201 F.3d at 1013; Cox, 471 F.3d at 907.  Indeed, Dr. Kumar reported, in April 2008, that Plaintiff did not have any major neurological issues; that she had normal hip motion; and that she was able to walk without difficulty. Additionally, Dr. Fan reported that Plaintiff could frequently lift fifteen to twenty pounds.

Fifth, the ALJ noted that Plaintiff's testimony that she could sit off and on for eight hours was inconsistent with Dr. Katyal's opinion. Tr. 41-42.

 In conclusion, the court finds that the ALJ gave good reasons for discounting Dr. Katyal's opinion. See SSR 96-2p; 20 C.F.R.  § § 404.1527 and 416.927.  To the extent that it was necessary for the ALJ to resolve conflicts in the record upon discounting Dr. Katyal's opinion, the ALJ was exercising his obligation to resolve such conflicts. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). See also Tindell v. Barnhart, 444 F.3d at 1004.  The court

finds that the weight the ALJ gave to Dr. Katyal's opinion is supported by substantial evidence on the record as a whole and that it is consistent with the Regulations and case law.

Plaintiff contends that the ALJ should have recontacted Dr. Katyal. The duty to develop the record includes the duty to develop the record as to the medical opinion of the claimant's treating physician. Higgens v. Apfel, 136 F. Supp.2d 971, 978 (E.D. Mo. 2001) (citing Brown v. Bowen, 827 F.2d 311, 312 (8th Cir.1987); Brissette v. Heckler, 730 F.2d 548, 549-50 (8th Cir.1984); Thorne v. Califano, 607 F.2d 218, 219-20 (8th Cir.1979). The Regulations provide at 20 C.F.R. § 404.1624(c)(3) that "[i]f the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information." Where the record contains medical records and opinions of doctors, other than a claimant's treating physician, each of whom evaluated the claimant's limitations, an ALJ need not recontact the claimant's treating doctor. Weiler v. Apfel, 179 F.2d 1107, 1111 (8th Cir. 1999). Additionally, "[w]hile the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required 'to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.'" Goff, 421 F.3d at 791(8th Cir. 2005) (quoting Stormo, 377 F.3d at 806). Where an ALJ determines that a treating doctor's opinion is "inherently contradictory or unreliable," the ALJ is not required to seek additional information from that doctor. Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006). The ALJ is not required to obtain further medical evidence unless the evidence is insufficient for the ALJ to make

a determination as to whether a claimant is disabled. See 20 C.F.R. §§ 404.1512, 404.1519a(b), 404.1624(c)(3).

In the matter under consideration, substantial evidence establishes that the ALJ had sufficient evidence to determine whether Plaintiff was disabled. As such, the ALJ was not required to recontact Dr. Katyal or any other doctor. See Tellez v. Barnhart, 403 F.3d 953, 956-57 (8th Cir. 2005) (holding that the ALJ was not required to obtain additional medical opinions where "there [was] no indication that the ALJ felt unable to make the assessment he did and his conclusion [was] supported by substantial evidence").

**C.     Testimony of the VE:**

Plaintiff contends that the ALJ ignored the VE's testimony that there is no work which Plaintiff can perform and that the ALJ did not pose a proper hypothetical to the VE. The court has found above that the ALJ's RFC determination is supported by substantial evidence on the record. The ALJ posed a hypothetical to the VE that included all of Plaintiff's limitations which the ALJ found credible and as incorporated into the RFC which he assigned to Plaintiff. The VE testified that there was work in the national economy, existing in substantial numbers, that the hypothetical person with Plaintiff's RFC can perform.

An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. The ALJ in the matter under consideration did so. Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania, 879 F.2d at 445; Rautio, 862 F.2d at 180. The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial

evidence); <u>Hunt v. Massanari</u>, 250 F.3d 622, 625 (8th Cir. 2001); <u>Sobania</u>, 879 F.2d at 445; <u>Roberts v. Heckler</u>, 783 F.2d 110, 112 (8th Cir. 1985). Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. <u>Robson v. Astrue</u>, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); <u>Wingert v. Bowen</u>, 894 F.2d 296, 298 (8th Cir. 1990). The hypothetical posed to the VE precisely set forth Plaintiff's limitations as determined by the ALJ. As such, the court finds that the VE's testimony that there is work in the economy in substantial numbers that Plaintiff can perform is supported by substantial evidence. Moreover, the ALJ was not required to give controlling weight to the hypothetical Plaintiff's attorney posed to the VE as that hypothetical included limitations the ALJ did not find credible.[2] <u>See</u> <u>Gilbert</u>, 175 F.3d at 604. The court finds, therefore, that the ALJ did not ignore the VE's testimony and that the hypothetical which the ALJ posed to the VE, upon which the ALJ relied, was proper.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in Complaint and Brief in Support of Complaint are **DENIED;** Docs.1, 17

---

[2] These limitations included no squatting, kneeling, climbing, or twisting, and only occasional bending and stooping.

**IT IS FURTHER ORDERED** that a separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 26th day of August, 2010.